DAVID MARA (SB# 230498)
JILL VECCHI (SB# 299333)
MATTHEW CRAWFORD (SB# 310230)
dmara@maralawfirm.com
jvecchi@maralawfirm.com
mcrawford@maralawfirm.com
**MARA LAW FIRM, PC**
2650 Camino Del Rio North, Suite 205
San Diego, California 92108
Telephone: (619) 234-2833
Facsimile: (619) 234-4048

SHAUN SETAREH (SB# 204514)
shaun@setarehlaw.com
SETAREH LAW GROUP
315 S. Beverly Dr., Suite 315
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

Attorneys for Plaintiffs
STEVEN DE LA CRUZ and CYNTHIA MEGGS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DE LA CRUZ and CYNTHIA MEGGS, on behalf of themselves, all others similarly situated, and on behalf of the general public,<br><br>              Plaintiffs,<br><br>v.<br><br>THERMO FISHER SCIENTIFIC, INC.; MICROGENICS CORPORATION; and DOES 1-100,<br><br>              Defendants. | Case No. 5:17-CV-01918-DDP-SP<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: July 29, 2019<br>Time: 10:00 a.m.<br>Judge: Hon. Dean D. Pregerson<br>Dept.: 9C |

i

1  **TO ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

2       PLEASE TAKE NOTICE that on July 29, 2019, at 10:00 a.m. in Courtroom No.

3  9C in the above entitled courthouse located at 350 West First Street, Los Angeles,

4  California 90012, Plaintiffs Steven De La Cruz and Cynthia Meggs (hereinafter

5  "Plaintiffs") will move this Court for an Order Granting Plaintiffs' Motion for Final

6  Approval of Class Action Settlement. Defendants Thermo Fisher Scientific, Inc. and/or

7  Microgenics Corporation (hereinafter "Defendants") does not oppose this Motion.

8       This motion is based upon this notice, the accompanying Memorandum of Points

9  and Authorities filed herewith; the Court's Order Granting Plaintiffs' Motion for

10  Preliminary Approval of Class Action Settlement; the filings on record in this case; and

11  upon such further evidence, both documentary and oral, that may be presented at the

12  hearing of this motion.

13

14  Dated: July 1, 2019                          **MARA LAW FIRM, PC**

15                                               By:/s/ *Jill Vecchi*

16                                                   David Mara, Esq.
                                                     Jill Vecchi, Esq.
17                                                   Matthew Crawford, Esq.
                                                     Representing Plaintiffs STEVEN DE LA
18                                                   CRUZ and CYNTHIA MEGGS

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION          Case No. 5:17-CV-01918-DDP-SP
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF SETTLEMENT ..................................................................... 3

III.  THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY
      ADHERED TO.................................................................................................. 4

    a.  Dissemination of Class Notices ................................................................. 4

    b.  No Objections and Five Requests for Exclusion Have Been Received ............. 5

    c.  Uncashed Settlement Checks....................................................................... 5

IV.  DISCUSSION .................................................................................................. 6

    a.  The Settlement Meets the Standards Governing Final Approval ....................... 6

        i.    Settlement was Reached Through Arm's-Length Negotiations.................... 7

        ii.   *In re* Bluetooth *Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir.
              2001), Factors Are Not Present Here................................................... 7

        iii.  The Settlement is Fair ................................................................. 8

    b.  Sufficient Discovery and Investigation Has Occurred .................................... 12

    c.  Class Counsel are Experienced.................................................................. 13

    d.  The Class Members' Response to the Settlement is Further Evidence that the
        Settlement is Fair and Reasonable ........................................................... 13

    e.  The Court Should Approve of the Settlement Administration Fee ................... 14

V.   CONCLUSION ............................................................................................... 15

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION                Case No. 5:17-CV-01918-DDP-SP
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**CASES**

*Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946
(9th Cir. 2011) ................................................................................................. 8, 9

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ............................... 8

*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004...................... 15

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)............................... 6

*Eisen v. Porsche Cars North America, Inc.,* 2014 WL 439006 at *3 (C.D. Cal. Jan.
30, 2014)............................................................................................................ 14

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005)........... 7

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)..................... 6, 7, 10

*Heritage Bond Litigation*, 2005 WL 1594403................................................................ 6

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).................................................. 6

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ................................... 7

*Lane v. Facebook, Inc.*, 2010 WL 9013059, *5 (N.D. Cal. March 17, 2010)........... 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)................... 10

*Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976) . 16

*Marshall v. Holiday Magic*, Inc., 550 F.2d 1173 (9th Cir. 1977) .............................. 9

*Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, *5 (S.D. Cal. Jan. 9, 2014) 13

*MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, *2 (C.D. Cal. June 6,
2013)................................................................................................................... 13

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688
F. 2d 615, 625 (9th Cir. 1982)........................................................................ 9, 10

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................... 7

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab.
Litig.*, 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013) ......... 14

*Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal.
2014).................................................................................................................... 9

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION                    Case No. 5:17-CV-01918-DDP-SP
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1 | **STATUTES**

2 | Federal Rule of Civil Procedure 23 .......................................................................... 6

3 | Rule 23(e)................................................................................................................... 8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION                Case No. 5:17-CV-01918-DDP-SP
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    **I.    INTRODUCTION**

2    This motion seeks final approval of a $4,700,000 proposed class action

3    settlement achieved on behalf of 3,445 class members. Plaintiff STEVEN DE LA

4    CRUZ (hereinafter referred to as "Plaintiff De La Cruz") and Plaintiff CYNTHIA

5    MEGGS (hereinafter referred to as "Plaintiff Meggs") (collectively Plaintiff De La

6    Cruz and Plaintiff Meggs are referred to as "Plaintiffs") allege that Defendants

7    THERMO FISHER SCIENTIFIC INC. and/or MICROGENICS CORPORATION

8    (collectively referred to as "Defendants"): (1) failed to pay all straight time or

9    minimum time wages; (2) failed to pay overtime; (3) failed to provide meal periods;

10    (4) failed to authorize and permit rest periods; (5) knowingly and intentionally failed

11    to comply with itemized employee wage statement provisions; (6) failed to pay all

12    wages due at the termination of employment; (7) violated the Unfair Competition

13    Law; (8) violated the Private Attorneys General Act of 2004 ("PAGA"); and (9)

14    failed to pay reasonable and necessary business expenses.  Defendants deny that the

15    claims have any merit, and do not concede any of these issues in connection with the

16    settlement. Through this motion, Plaintiffs seek final approval of the Parties'

17    Amended Joint Stipulation of Class Settlement and Release (Dkt. No. 54, filed Mar.

18    21, 2019) (hereinafter referred to as "Joint Stipulation" or "Settlement

19    Agreement"). [1] The proposed settlement class is comprised of all individuals

20    employed by Thermo Fisher Scientific Inc. or any of its subsidiaries or affiliates,

21    including but not limited to Microgenics Corporation, in any non-exempt position in

22    the state of California at any point during the time period of March 6, 2013 through

23    January 17, 2019 (referred to as the "Class").

24    In response to the Notice of Class Action Settlement, no objections and five

25    (5) requests for exclusion[2] were received by the Settlement Administrator from

26    _____

27    [1] This Agreement is attached as Exhibit 1 to the Declaration of Shaun Setareh, Esq.
filed concurrently herewith.

28    [2] Representing 0.15% of the Class Members. These Class Members will not release

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION                1                Case No. 5:17-CV-01918-DDP-SP
SETTLEMENT

1   Class Members. One hundred percent (100%) of the settlement funds will be paid

2   out to Participating Class Members[3] as there is no reversion to Defendants and

3   99.85% of all Class Members are participating in the settlement. The proposed

4   settlement is projected to pay Participating Class Members an average estimated

5   payment of $968.60, with the highest settlement share estimated at $1,964.62, less

6   employee taxes for the settlement share that is devoted to wages.[4]

7          On April 8, 2019, the Court granted preliminary approval of the settlement,

8   subject to and contingent upon this Court's final approval. As part of its preliminary

9   approval order, the Court conditionally certified, for settlement purposes only, the

10  following Class: "All individuals employed by Thermo Fisher Scientific Inc. or any

11  of its subsidiaries or affiliates, including but not limited to Microgenics Corporation,

12  in any non-exempt position in the state of California at any point during the time

13  period of March 6, 2013 through January 17, 2019." Dkt. # 61. It is requested this

14  Court grant final approval of this settlement. After analyzing the strengths and

15  vulnerabilities of the Class' claims along-side Defendants' potential liability

16  exposure, this proposed non-reversionary settlement of $4,700,000 is fair,

17  reasonable, and adequate.

18         To date: (1) Class Members were mailed a Notice of Class Action Settlement

19  ("Class Notice") on May 9, 2019; (2) nine Class Notices have been returned as

20  completely undeliverable by U.S. Mail;[5] (3) no objections to the settlement were

21

22  any claims against Defendants and will not receive any funds pursuant to the

23  settlement.

    [3] Participating Class Members are Class Members who do not submit a valid and

24  timely request to exclude themselves from this Settlement.

    [4] Declaration of Chris Lawless (on Behalf of CPT Group, Inc.) with Respect to

25  Notification and Settlement Administration ("Lawless Decl.") ¶ 16.

26  [5] These nine undeliverable Class Notices represent 0.26% of the Class Members. At

27  the parties' request, the settlement administrator made every reasonable effort to

    reach these individuals, including, for example, by attempting to contact them at

28  their last known addresses, telephone numbers, and email addresses (to the extent

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED          Case No. 5:17-CV-01918-DDP-SP
MOTION FOR FINAL APPROVAL OF CLASS ACTION        2
SETTLEMENT

1   received by the Settlement Administrator; and (5) five Class Members submitted

2   requests for exclusion from the Settlement. The response of the Class Members

3   supports the Court's finding that the Settlement is fair, reasonable, and adequate.

4   For the reasons that follow, it is respectfully requested the Court grant this motion

5   and find the settlement to be fair, reasonable, and adequate.

6       **II.    SUMMARY OF SETTLEMENT**

7           As described in the motion for Preliminary Approval and stated in the

8   Settlement Agreement, Defendants shall pay $4,700,000 (referred to as the "Gross

9   Settlement Amount" or "GSA") which includes: (1) settlement administration costs

10  of $22,500;[6] (2) Class Representative General Release Payments not to exceed

11  $10,000 each to both Plaintiff De La Cruz and Plaintiff Meggs; (3) attorneys' fees

12  not to exceed $1,175,000 (25% of the GSA); (4) costs of $23,151.51; and (5) LWDA

13  payment of $75,000 (which is 75% of $100,000 allocated to Plaintiffs' claims under

14  PAGA). All of these payments are subject to the Court's approval.

15          After the above amounts are subtracted from the GSA, the remaining portion

16  of the GSA – referred to as the Net Settlement Amount ("NSA") – shall be available

17  for distribution to Participating Class Members. After subtracting the above

18  amounts, the NSA available for individual settlement payments is approximately

19  $3,384,348.49.

20          The Participating Class Members' distribution amounts will be calculated by

21  dividing the Net Settlement Amount by the total number of Compensable

22  Workweeks[7].  For purposes of payment, a week of employment shall be defined as

23  any regular workweek in which an individual worked three or more calendar days.

24  _____

25  available).

[6] Lawless Decl. ¶ 18.

26  [7] Compensable Workweeks means all workweeks during which Class Members

27  were employed in a Class Position by Thermo Fisher Scientific Inc. or any of its

    subsidiaries or affiliates, including but not limited to Microgenics Corporation,

28  during the time period of March 6, 2013 through January 17, 2019.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED          Case No. 5:17-CV-01918-DDP-SP
MOTION FOR FINAL APPROVAL OF CLASS ACTION      3
SETTLEMENT

1  The Settlement Administrator will then calculate the amount due to each

2  Participating Class Member by multiplying the appropriate dollars-per-

3  compensable-workweek amount by the number of Compensable Workweeks

4  worked by each Participating Class Member.

5        As will be discussed, the settlement has been a success, with no objections to

6  the settlement submitted by Class Members and only five requests for exclusion

7  submitted. The Class response and settlement shares to class members further

8  demonstrate the settlement being fair, reasonable and adequate.

9  **III.    THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY
        ADHERED TO**

10       **a.    Dissemination of Class Notices**

11        Preliminary Approval was granted on April 8, 2019. At that time CPT Group,

12  Inc. was appointed by the Court as the Settlement Administrator. CPT Group, Inc.

13  has complied with the Court's orders concerning dissemination of the Class Notice

14  by first-class regular U.S. Mail. After receiving the Class Data from Defendants,

15  names and addresses contained in the Class List were processed against the National

16  Change of Address ("NCOA") database, maintained by the United States Postal

17  Service ("USPS"), for purposes of updating and confirming the mailing addresses

18  of the Class Members before mailing of the Class Notices. Lawless Decl. ¶ 5. The

19  Notice Packets were mailed to Class Members on May 9, 2019. Lawless Decl. ¶ 6.

20  CPT Group, Inc. re-mailed 102 Notice Packets because CPT Group, Inc. found an

21  updated address through skip tracing. Lawless Decl. ¶ 9. In an effort to ensure all

22  Class Members received a Class Notice, CPT Group, Inc. made every reasonable

23  effort to reach these Class Members whose Notice Packets were returned to CPT

24  Group, Inc.'s office by attempting to contact them at their last known addresses,

25  telephone numbers, and email addresses (to the extent available). Lawless Decl. ¶

26  8. In addition, throughout the notice process CPT Group, Inc. has operated a toll-

27  free telephone number for Class Members to call with inquiries concerning the

28

settlement. Lawless Decl. ¶ 2. Nine (9) Notice Packets were ultimately deemed undeliverable by U.S. Mail.[8] Lawless Decl. ¶ 9.

### b. No Objections and Five Requests for Exclusion Have Been Received

The deadline to submit an objection to the settlement or a request for exclusion from the settlement was June 8, 2019. No objections have been filed with the Court or submitted to CPT Group, Inc. and five (5) requests for exclusion from the settlement were received by CPT Group, Inc. Lawless Decl. ¶¶ 10, 11. These five (5) requests for exclusion represent 0.15% of the Class Members. All Class Members who did not submit a request for exclusion will receive a settlement payment. Therefore, 3,440 Participating Class Members will receive a Settlement Payment. Lawless Decl. ¶ 13, 16.

### c. Uncashed Settlement Checks

Per the terms of the Settlement Agreement, CPT Group, Inc. was to have money attributable to cancelled settlement checks go to the California Unclaimed Wages fund in the names of the Settlement Class Members who did not cash the settlement check within 150 days or whose check was undeliverable. However, the State of California's Department of Industrial Relations no longer accepts unclaimed settlement funds from third-party settlement administrators.

Therefore, the Parties agreed that CPT Group Inc. shall remit the funds from cancelled settlement checks to the California State Controller pursuant to California's unclaimed property fund to be held in the name of the settlement class member who did not cash the settlement check within 150 days or whose check was undeliverable. Lawless Decl. ¶ 17. Settlement Class Members will now be able to claim their settlement payment from the California State Controller, just as they would have been able to from the Department of Industrial Relations.

\\

---

[8] These nine undeliverable Class Notices represent 0.26% of the Class Members.

1

2

## IV.    DISCUSSION

### a.  The Settlement Meets the Standards Governing Final Approval

3      Matters that have been filed as class actions require court approval before a

4   settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP

5   23(e) provides that any compromise of a class action must receive Court approval.

6   The Court has broad discretion to grant approval and should do so where the

7   proposed settlement is "fair, adequate, reasonable, and not a product of collusion."

8   *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*,

9   218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be

10   approved, the Ninth Circuit has a "strong judicial policy that favors settlements,

11   particularly where complex class action litigation is concerned."  *In re Heritage*

12   *Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing*

13   *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

14      Approval of a class action settlement involves a two-step process. In

15   determining whether to grant final approval of the settlement, a court examines the

16   terms for overall fairness and, in so doing, balances the following factors: the

17   strength of the plaintiff's case; the risk, expense, complexity and likely duration of

18   further litigation; the risk of maintaining class action status throughout the trial; the

19   amount offered in settlement; the extent of discovery completed; the stage of the

20   proceedings; the experience and views of counsel; the presence of a governmental

21   participant; and the reaction of the class members to the proposed settlement.

22   *Hanlon*, 150 F.3d at 1026.

23      Here, the proposed settlement was reached only after undertaking a robust

24   factual and legal investigation into Defendants' pay structures and wage and hour

25   policies, which culminated in the Parties reaching an agreement to settle after

26   attending a full day of arm's length mediation. The settlement amount takes into

27   consideration the risks with regard to certifying Plaintiffs' claims, as well as

28

difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### i. Settlement was Reached Through Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

On August 27, 2018, the Parties held a lengthy private mediation with respected wage and hour mediator, Lynn Frank. At the end of this mediation, Ms. Frank issued a mediator's proposal. This proposal was ultimately accepted by all Parties resulting in the settlement at issue in this motion. Though cordial and professional, the settlement negotiations were, at all times, adversarial and non-collusive in nature. Declaration of David Mara ("Mara Decl.") ¶ 9.

### ii. *In re* Bluetooth *Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001), Factors Are Not Present Here

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or

other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

> 1.   When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
> 2.   When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
> 3.   When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This settlement passes the *Bluetooth* test. The NSA is almost three times larger than the fees requested by Class Counsel, which is the accepted federal benchmark of 25% of the GSA.[9] Any amount requested by Class Counsel and not awarded by the Court shall become part of the NSA and be available for distribution to Participating Class Members. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

### iii.   The Settlement is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is

---

[9] Class Counsel is requesting $1,175,000 (25% of the GSA). The NSA is approximately $3,384,348.49.

1    fair. "Ultimately the district court's determination is nothing more than 'an

2    amalgam of delicate balancing, gross approximations and rough justice.'" *Officers*

3    *for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d

4    615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will

5    realize for the class against the uncertainty of litigation and the possibility that the

6    class members would obtain no relief in the absence of a settlement. *See Linney v.*

7    *Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very

8    uncertainty of outcome in litigation and avoidance of wasteful and expensive

9    litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026

10    (When considering the fairness of a proposed class settlement, courts consider the

11    strength of a plaintiff's case against the risk, expense, complexity and likely

12    duration of further litigation.).

13           The liability questions in this case touched on California's wage and hour

14    laws, which touched on the ever-changing legal landscape. For instance, Plaintiffs

15    contend that Defendants' alleged failure to provide compliant meal and rest periods,

16    as well as Defendants' alleged failure to pay all overtime owed, were three of the

17    predominant claims in this lawsuit.

18           Plaintiffs' theory of liability for the rest period claim is that rest periods

19    Defendants provided were not duty-free, because, Plaintiffs assert that Defendants

20    have uniform policies which require employees to remain on the employer premises

21    during rest periods.[10] To the extent Defendants actually imposed any such on-

22    premises restraint during ten (10) minute rest periods, Plaintiffs maintain that this

23    violates California law and triggers a California Labor Code Section 226.7 violation.

24           Plaintiffs also contend that Defendants' meal period policies are facially

25    unlawful because they fail to provide employees with first meal periods before the

26

27

28

[10]Defendants maintain that the rest period policies being challenged by Plaintiffs
apply only to a subset of the workgroups at issue, and not to the entire putative class.

1    end of the fifth hour of work and second meal periods before the end of the tenth

2    hour of work.[11] Plaintiffs maintain that Defendants inform employees that they get

3    a first meal period if they work more than five (5) hours in a shift and a second meal

4    period if they work more than ten (10) hours in a shift. Plaintiffs further contend,

5    however, that Defendants do not inform employees that they get a first meal period

6    before the end of the fifth hour of work or a second meal period before the end of

7    the tenth hour of work, failing to provide meal periods to certain employees within

8    the timeframes set forth in California law.

9         Further, Plaintiffs assert that Defendants failed to account for certain non-

10   discretionary bonus payments when calculating class members' regular rate of pay

11   for purposes of paying overtime true-up payments. Thus, Plaintiffs argue Defendants

12   paid certain class members less overtime than they were owed. Plaintiffs contend

13   Defendants give annual and quarterly bonuses to some employees. Plaintiffs allege

14   that no adjustment was made for some of these annual and quarterly bonuses.

15   Therefore, Plaintiffs argue that employees who received annual and quarterly

16   bonuses that were not factored into employees' regular rates of pay are owed

17   additional overtime compensation.

18        Defendants argue that they have provided employees with timely, duty-free

19   meal and rest periods, and that all non-discretionary bonus payments were properly

20   included in employees' regular rates of pay for purposes of calculating and paying

21   overtime. Defendants contend that regardless of whether or not it tells employees

22   they are to remain on the premises during rest periods (a point that Defendants do

23   not concede), the practical limitations the ten (10) minutes allotted for rest periods

24   imposes on an employee's movement are what prevent employees from leaving the

25   premises. Notwithstanding the dispute of whether Defendants' policies comply or

26

27

28

---

[11]Defendants maintain that the meal period policies being challenged by Plaintiffs apply only to a subset of the workgroups at issue, and not to the entire putative class.

1   do not comply with California law, and without in any way agreeing that the current

2   policy applicable to some of the putative class members would be found unlawful,

3   Defendants have agreed to change their rest period policies as a negotiated part of

4   the Parties' amended class settlement, to the extent that any on-premises requirement

5   exists in any workgroup.

6         Defendants further contend that it is not unlawful that its policies for certain

7   workgroups do not state that first meal periods will occur by the end of the fifth hour

8   of work and that second meal periods will occur by the end of the tenth hour of work.

9   In particular, Defendants maintain that the absence of a timing requirement in a

10   written policy is not itself illegal, nor would it foreclose a showing that employees

11   are otherwise provided timely, compliant meal periods. Declarations gathered by

12   Defendants, including declarations by putative class members, indicate that the

13   Company's managers and supervisors advise employees that they can take meal

14   periods within the time periods outlined by California law. Defendants contend that

15   the time records further support this conclusion. Defendants also maintain that if

16   meal periods were not taken within compliant time frames, it is because employees

17   chose to take the meal periods at a later time – a conclusion that is likewise supported

18   by putative class member declarations.

19         Additionally, Defendants maintain that to the extent bonuses were not

20   included in the regular rate of pay for the purposes of calculating overtime

21   compensation (if any), those bonuses were discretionary bonuses and, as such, not

22   includable in the employees' regular rates of pay. To the extent they determined that

23   adjustments were necessary, Defendants contend they performed compensation

24   adjustments in compliance with California law when it diverged from the federal

25   method.

26         This settlement represents a well-crafted compromise of the divergent

27   positions of the Parties that provides substantial benefits for the Class. Each side

28

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION   11
SETTLEMENT                                 Case No. 5:17-CV-01918-DDP-SP

1 evaluated the strengths and weaknesses of their case and independently concluded

2 that this settlement represents a responsible means of addressing Plaintiffs' claims

3 and Defendants' defenses.

4          Another factor considered by some courts in approving a settlement is the

5 complexity, expense and likely duration of the litigation. *Morey v. Louis Vuitton N.*

6 *Am., Inc.*, 2014 WL 109194, *5 (S.D. Cal. Jan. 9, 2014); *In re MRV Communs., Inc.*

7 *Derivative Litig.*, 2013 WL 2897874, *2 (C.D. Cal. June 6, 2013). In applying this

8 factor, a court should weigh the benefits of the settlement against the expense and

9 delay involved in achieving an equivalent or even more favorable result at trial. *Lane*

10 *v. Facebook, Inc.*, 2010 WL 9013059, *5 (N.D. Cal. March 17, 2010).   Here,

11 litigating the case through trial would have been expensive, required numerous hours

12 of work, involved substantial risk, and would not have been fully resolved for years.

13 In contrast, the proposed settlement provides significant and certain compensation

14 that is available now as opposed to potentially and hypothetically sometime in the

15 distant future.

16          Finally, employment cases (including wage and hour cases) can be expensive

17 and time-consuming to prosecute. The alternative to a class settlement – i.e.,

18 individual litigation – would tax private and judicial resources over a period of years.

19 As such, the settlement in this case is consistent with the "overriding public interest

20 in settling and quieting litigation" that is "particularly true in class action suits" and

21 thus, provides another reason to approve the settlement.  *Eisen v. Porsche Cars*

22 *North America, Inc.,* 2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014); *In re Toyota*

23 *Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,

24 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013); 4 Newberg §

25 11.41 at 87-89.

26          **b.  Sufficient Discovery and Investigation Has Occurred**

27          Discovery and litigation in both the *De La Cruz* and *Meggs* matters were

28

1    extensive. After filing, all Parties conducted written discovery. This written

2    discovery led to the production of hundreds of documents. These documents include,

3    among others: (1) paycheck stubs; (2) time punch records; (3) policy documents

4    which reflect Defendants' meal and rest period policies; (4) documents regarding

5    how employees are paid; and (5) documents outlining bonuses employees receive.

6    Defendant Thermo Fisher Scientific Inc. also took the deposition of Plaintiff De La

7    Cruz.

8        **c.  Class Counsel are Experienced**

9        Class Counsel's experience in complex class action matters is extensive.

10   Indeed, class counsel from the Mara Law Firm, PC (formerly The Turley & Mara

11   Law Firm, APLC) were class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp.*

12   *et al.,* which is the subject case in the landmark decision of *Brinker Restaurant Corp.*

13   *v. Superior Court* (2012) 53 Cal.4th 1004. Mara Decl. ¶ 4. Additionally, class

14   counsel from the Setareh Law Group was lead counsel in the recent landmark

15   decision of *Troester v. Starbucks Corporation et al.* Declaration of Shaun Setareh

16   ("Setareh Decl."), ¶ 9.

17       Class Counsel has prosecuted numerous cases on behalf of employees for

18   California Labor Code violations and thus are experienced and qualified to evaluate

19   the class claims and to evaluate settlement versus trial on a fully informed basis, and

20   to evaluate the viability of the defenses. Mara Decl. ¶ 3-8; Setareh Decl. ¶ 9. This

21   experience instructed Class Counsel on the risks and uncertainties of further

22   litigation and guided their determination to endorse the proposed settlement. Mara

23   Decl. ¶ 3-8; Setareh Decl. ¶ 10.

24       **d.  The Class Members' Response to the Settlement is Further**
         **Evidence that the Settlement is Fair and Reasonable**

25

26       The Ninth Circuit has held that the number of class members who object to a

27   proposed settlement is a factor to be considered in determining a settlement's

28   fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION          13          Case No. 5:17-CV-01918-DDP-SP
SETTLEMENT

1  1976). Here, not a single Class Member has objected to the settlement and five Class

2  Members requested to be excluded from the settlement. Lawless Decl. ¶¶ 10, 11.

3  The lack of objections and low number of requests for exclusion evidences the Class

4  Members' endorsement of this non-reversionary settlement.

5            **e.  The Court Should Approve of the Settlement Administration Fee**

6            The Parties agreed to hire CPT Group, Inc. to be the Settlement Administrator,

7  a choice the Court approved in conjunction with granting preliminary approval. CPT

8  Group, Inc. was responsible for mailing the Class Notice to Class Members,

9  obtaining better addresses for undeliverable Class Notices, responding to Class

10 Member inquiries, providing weekly status reports to all counsel, receiving all

11 communications from the Class Members, and providing a declaration documenting

12 its duties and responsibilities to ensure the Class Members were given notice of the

13 Settlement. Lawless Decl. ¶ 2. Following the grant of final approval, CPT Group,

14 Inc. will continue to calculate the payments to Participating Class Members,

15 calculate the withholding taxes, and transmit to the appropriate government

16 agencies, send the individual Settlement Shares to Participating Class Members,

17 distribute other payments ordered by the Court, follow up with un-cashed checks,

18 and perform such other duties as described in the settlement agreement. Lawless

19 Decl. ¶ 2. CPT Group, Inc.'s fee of $22,500 for services rendered and to be rendered

20 is fair and reasonable and should be granted. Lawless Decl. ¶ 18.

21 \\

22 \\

23 \\

24 \\

25 \\

26 \\

27 \\

28

1  **V.     CONCLUSION**

2          In light of the foregoing, Plaintiffs request the Court find the settlement fair,

3  reasonable, and adequate and grant this Final Approval Motion. Plaintiffs further

4  requests that the Court enter final judgment.

5

6  Dated: July 1, 2019                    **MARA LAW FIRM, PC**

7                                         /s/ *Jill Vecchi*

8                                         David Mara, Esq.
                                          Jill Vecchi, Esq.
9                                         Matthew Crawford, Esq.
                                          Representing Plaintiffs STEVEN DE LA
10                                        CRUZ and CYNTHIA MEGGS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28